ALMINA DAHLIN PHILLIPS, Appellant, v.
E. LAWRENCE PHILLIPS, Appellee.

1 So. (2nd) 186
En Banc
Opinion Filed February 28, 1941
Rehearing Denied March 27, 1941

312

*W. J. Steed, Walter E. Smith* and *William E. Leahy,* for Appellant;

*Maguire, Voorhis & Wells,* for Appellee.

BUFORD, J.—The appeal brings for review a final decree of divorce and dismissing appellant's cross bill.

The record presented here consists of approximately two thousand typewritten pages, about 90 per cent of which

concerns matters occurring prior to December 13, 1935 when a final decree was entered in the Supreme Court of the District of Columbia in the following language:

"FINAL DECREE—This cause coming on to be heard at this term of court and it appearing that the parties have been reconciled, and upon consideration thereof, it is by the court this 13th day of December, 1935,

"ADJUDGED, ORDERED AND DECREED that this cause be and the same is hereby dismissed; and it is further

"ADJUDGED, ORDERED AND DECREED that upon consent of the parties hereto Rudolph H. Yeatman be and he is hereby awarded a fee in the sum of Seven Hundred and Fifty ($750.00) Dollars as counsel fee for the plaintiff herein.

"JESSE C. ADKINS, Justice.

"Consented to:

"R. H. Yeatman, Attorney for Plaintiff.

"James A. O'Shea,

"J. H. Burnett, Attorney for Defendant."

By the entry of this decree parties thereto were estopped to plead or prove as grounds for divorce anything known to them at that time which had transpired prior thereto unless after that date the conduct of the opposing party was such as to revive the cause or causes of action which existed and was known to the parties prior to that time.

The record shows that in the suit in which the decree, *supra,* was entered the appellant here was plaintiff and sued for divorce *mensa et thoro* and for suit money and alimony and also to restrain the defendant, the appellee here, from prosecuting or attempting to prosecute a suit for divorce which he had instituted in Hillsborough County, Florida, and from prosecuting or attempting to prosecute any actions for divorce, limited or absolute, against the plaintiff in any State or Country. The defendant had answered in that suit and, amongst other things, he averred that,

"And he admits that he has from time to time found it necessary to go away in order to take care of the business connected therewith; that he denies that when he left the plaintiff on the 19th of February, 1935, he wilfully abandoned her without lawful excuse or justification; that he admits he went from Augusta to Tampa, Florida, for the purpose of attending to the business of the Show."

So it is that whether or not E. Lawrence Phillips, the defendant in that suit, had lawful excuse or justification for separating himself from the plaintiff, Almina Dahlin Phillips, was an issue in that suit, and the alleged misconduct of the wife prior to the institution of that suit which was filed on March 15, 1935, was an issue subject to determination in that suit.

That the decree entered in the Supreme Court of the District of Columbia is entitled to full faith and credit here is not questioned.

So it is that we hold that the judgment of the Supreme Court of the District of Columbia adjudicated that a reconciliation between the parties as of the date of the decree, *supra,* had been effected and the parties are bound by that decree.

Recitals in a judgment are presumed to be true and correct unless contradicted by other parts of the record. See 34 C. J. 503, Sec. 795; Crew v. Platt, 119 Cal. 139, 51 Pac. 38.

"Persons not speaking when interest commanded them to be silent cannot thereafter be heard to speak when equity and conscience require them to be quiet." Nichols v. Bodenwein, 107 Fla. 25, 146 So. 86. See also Gray v. Gray, 91 Fla. 103, 107 Sou. 261.

So it is that whether or not there was in fact a reconciliation between the parties at the time of the entry of the decree, *supra,* is a matter which neither may now question.

The record shows conclusively that Mrs. Phillips, by consenting to the entry of that decree, lost certain valuable advantages which she had acquired in that litigation, notably, an injunction against her husband for prosecuting a divorce suit against her in any court in the United States except the District of Columbia. She had obtained a decree for maintenance whereby her husband was required to pay her $275.00 per month, and the exclusive use and occupation of the premises at No. 658 Maryland Ave., N. E., Washington, D. C., except certain parts thereof then otherwise occupied. She also forfeited the right to proceed with that suit to final adjudication on the merits and to have adjudicated therein the marital rights of the parties.

The record shows that the decree enjoining Mr. Phillips from prosecuting or attempting to prosecute any pending suit and ever instituting and prosecuting any suit against the plaintiff for a divorce, either absolute or limited, in any State or territory of the United States of America other than the District of Columbia was entered on the 25th day of March, 1935, and was consented to by notation by counsel for the defendant.

We find in the record no evidence which would warrant the adjudication that Mrs. Phillips was guilty of any acts of cruelty subsequent to the date of the decree based on reconciliation which would revive the cause of action because of things of which she may have been guilty prior to that time and, therefore, what she may or may not have done in that regard prior to the date of that decree is a matter with which the courts are not now concerned.

Mr. Phillips had filed a suit for divorce in Hillsborough County, Florida, before Mrs. Phillips filed her suit in the District of Columbia and yet when the suit was filed against him in the District of Columbia he submitted to the jurisdiction of the Court there and in terms admitted that he

was a resident of that jurisdiction. Thereafter the decree reciting reconciliation between the parties was entered.

Aside from the efficacy of the decree the record discloses that after the date of the alleged act of cruelty by Mrs. Phillips to her husband there was condonation and forgiveness on his part and he continued to live and cohabit with her until sometime early in 1935. The record is replete with letters and telegrams from him to her dated beginning early in 1934 and continuing until he filed the suit for divorce in Florida in 1935, expressing love and good will toward her, the last of which appears to have been dated Augusta, Ga., March 1, 1935, and is as follows:

"Mrs. Almina D. Phillips,

"658 Maryland Ave NE Wash DC

"Air mail checks for next week as may not be able to leave here until Monday or Tuesday Sorry cant be there Saturday If you get a court notice hold until I get there to explain Hope you Pap and business Okay Going to Atlanta Saturday. Received Olives letter As ever.

"Popsy."

So it may be said that we have presented in this case both the acts of condonation and a reconciliation subsequent to the commission of the alleged acts of cruelty by the wife to the husband.

In 9 R. C. L. 379, Sec. 170, it is said:

"As a general rule the condonation of a marital offense deprives the condoning spouse of the right of thereafter seeking a divorce for the condoned offense. If there is no breach of the condition after the condonation the forgiveness stands as complete, absolute and irrevocable."

In Youngs v. Youngs, 130 Ill. 230, 22 N. E. 806, 6 L. R. A. 548, 17 Am. St. Rep. 313, the Court said:

"The evidence tends to show, and is, as we think sufficient

to establish, condonation. The last act of personal violence to the complainant, proved, took place sometime in December, 1886; but the evidence shows that the complainant continued to live and cohabit with the defendant until she left him about the first of the following March. No subsequent conduct on the part of the defendant is shown which can be held to be sufficient to do away with such condonation, and we think the chancellor was correct in holding it to be a bar to the complainant's right to relief."

And again in 9 R. C. L. 383, Sec. 176, it is said:

"Cruelty as a ground for divorce is generally a course of conduct rather than a single act; and the rule is that sexual cohabitation after acts of cruelty cannot be considered as condonation in the sense in which it would be after an act of adultery. The effort to endure unkind treatment as long as possible is commendable; and it is obviously a just rule that the patient endurance by the wife of her husband's continuous ill-treatment should never be allowed to weaken her title to relief. On the other hand, it is well recognized that the voluntary marital cohabitation by the wife with her husband after acts of cruelty on his part which would have entitled her to a divorce will constitute condonation."

We recognize the rule to be as stated in Fekany v. Fekany, 118 Fla. 698, 160 Sou. 192, viz.: "Condonation in the law of divorce is the forgiveness of an antecedent matrimonial offense on condition that it shall not be repeated, and that the offender shall thereafter treat the forgiving party with conjugal kindness. Williams v. Williams, 23 Fla. 324, 2 So. 768; Wagner v. Wagner, 130 Md. 346, 100 Atl. 364; Austin v. Austin, 172 Mich. 620, 138 N. W. 215; Ellithorpe v. Ellithorpe (Iowa), 100 N. W. 328." But we do not think that rule applies in this case because in this case we have no evidence of acts of cruelty committed by the wife toward the husband after some time

in the early part of 1933, while the parties continued to live as man and wife and to cohabit together when Mr. Phillips was in Washington, until some time during 1935, when he left Washington on business which required him to travel about the country. It was while he was away on this business that he filed the divorce suit in Florida.

In Ringling v. Ringling, 119 Fla. 210, 161 Sou. 406, we held: "Condonation of wife's misconduct occurring subsequent to filing of bill of divorce by husband which had been dismissed at his behest upon reconciliation being reached, September 1, 1933, *held* not to preclude husband from filing another bill of divorce on March 3, 1934, and therein alleging as ground for divorce same misconduct which was alleged in prior bill of complaint, together with charges of subsequent similar conduct, since condonation of past matrimonial offenses is impliedly conditioned upon future good behavior of offending spouse." The inference to be drawn from the holding in that case is that if there had been no charges of subsequent misconduct there should have been no revival of the charges of that misconduct which was antecedent to the condonation.

In Crews v. Crews, 130 Fla. 499, 178 Sou. 139, we held: "The Court may refuse divorce in its direction, even though condonation is not specially pleaded, where evidence shows that injured party actually forgave the injury with knowledge of all the facts, and that injury had not been revived by subsequent misconduct." In that case, after quoting some of the testimony, it was said:

"This testimony of plaintiff shows that plaintiff at the time he took his wife back had knowledge of two occasions when she and Overstreet had illicit relations with each other; and it also shows that plaintiff thereafter lived with her as man and wife for a period of almost five months. Renewing the relation of living together as man and wife

embraces the renewal of sexual relations. See Knowles v. Knowles, 6 Del. Boyce's 458, 100 Atl. 569. Sexual intercourse without forgiveness is condonation if engaged in after the offended spouse has knowledge and means of proving adultery. Rogers v. Rogers, 67 N. J. E. 534, 58 Atl. 822; 2 Schouler—Marriage, Divorce, Separation and Domestic Relations (6th ed.) 1893, Sec. 1698. Though plaintiff may have taken his wife back on assurance from her that he would never regret it, and in hopes that he could forgive and forget, yet his conduct of resuming with her the relation of man and wife for a period of almost five months, amounted in law to an unqualified condonation of those acts of marital infidelity of which he was apprised at that time."

In that case condonation was held to bar relief and the only evidence of condonation was the resumption and continuing of the marital relations for about five months after the infidelity was committed and the husband had knowledge thereof.

In the instant case the marital relations were continued for more than a year after the last act of cruelty is shown to have been committed. In fact, there are many things in this record which warrant more than a mere suspicion that it was not so much the conduct of the wife during the early years of the married life of the parties which caused the appellee to desire a dissolution of the bonds of matrimony as it was his interest in another woman from whom communications to him found their way into this record and indicate a relationship closer than that of a mere business associate.

The record discloses that the testimony of Mr. Phillips is very positive and unequivocal to the effect that he had in 1936, more than a year before the institution of this suit, established his residence in Florida, but that evidence is uncorroborated.

The case of Chisholm v. Chisholm, 98 Fla. 1196, 125 Sou. 694, has been generally relied upon as authority holding that bona ·fide residence in Florida for the period required by statute as a prerequisite f.or maintaining a suit for divorce may not be established by the uncorroborated testimony of the plaintiff. What we held in that case was:

"While complainant's testimony is not required to be corroborated in every particular, a decree of divorce should not be granted solely upon the uncorroborated testimony of the complainant as to the proof of the 'cause' alleged in the bill." And in that case we also held: "While it may be sufficient to allege the residence of complainant substantially in the language of the statute, the proof to· sustain such allegation must show that complainant has resided *bona fide* in this State for the two years *next preceding* the date of filing suit."

The matter of residence for the statutory period is jurisdictional and jurisdiction cannot be acquired or exercised by or pursuant to agreement between the parties. Jurisdiction cannot be assumed on decree *pro confesso*. Certainly if the *cause* for divorce cannot be established by the uncorroborated testimony of the plaintiff, although it may be adjudicated on the admission or confession of the defendant, there exists a greater reason why the *jurisdictional prerequisite* may not be established by uncorroborated testimony of the plaintiff.

If a plaintiff in a divorce suit is a *bona fide* resident of the State of Florida, and has been such for the statutory period, some of his friends and acquaintances will know about it and be in position to give corroborating testimony. We may say here that the taking up of abode in Florida for the sole purpose of prosecuting a divorce suit is not the establishment of a *bona fide* residence in Florida. There must be coupled with the sojourn in the State the intent

to make this State the legal residence of the plaintiff. The State is a party at interest in every divorce suit and, therefore, the courts should not allow the process of the State to be used by those who are not entitled to have its beneficent aid and protection. No hardship can be worked by requiring corroboration of the plaintiff's testimony both as to cause or ground for divorce and as to *bona fide* residence for the statutory period.

Our conclusion is that the plaintiff in the court below failed to meet the burden of establishing the jurisdictional fact of residence in this State and that, therefore, the decree of divorce should not have been entered. Our further conclusion is that had the plaintiff by competent evidence established the jurisdictional fact of residence, the relief prayed should have been denied on the merits as disclosed by the evidence.

We hold, therefore, that when the plaintiff came into the court of equity with his bill of complaint he submitted himself to the jurisdiction of the court and thereby made himself amenable to such orders as the court might make in respect to costs and charges growing out of this litigation. We, therefore, adjudge that the plaintiff in the court below, appellee here, be required to pay the costs of this suit in the lower court and in the Supreme Court and shall be required to pay a reasonable sum to the defendant in the court below, appellant here, for her solicitor's fees in the circuit court and in this Court, all of which the court below may determine, subject to review by this Court.

The decree is reversed and the cause remanded with directions that the court below enter a final order not inconsistent with the views herein expressed.

It is so ordered.

WHITFIELD, TERRELL, CHAPMAN, THOMAS and ADAMS, J. J., concur.

BROWN, C. J., dissents in part.