## DAVEY *v.* DAVEY

[No. 135, October Term, 1952.]

*Decided May 20, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Samuel Schenker* and *John B. Wright,* for appellant.

*George B. Woelfel* and *Thomas J. Curley,* for appellee.

SOBELOFF, C. J., delivered the opinion of the Court.

After divorce and remarriage, Capt. Ersal D. Davey and Ethel Margaret Davey soon found themselves again in the divorce court to which both resorted for relief from their marital grievances. The wife claimed alimony, alleging that her husband had become so lax in his personal habits as to force her in the interest of her health and self-respect to discontinue sharing his bed. The husband filed a cross-complaint for divorce, alleging that the wife had abandoned and deserted him by refusing him marital privileges although she continued to live under his roof. From a decree dismissing her bill and granting him a divorce *a vinculo matrimonii* she appeals.

The record is silent as to the date of their first marriage, but they have a married daughter who appeared as a witness in the case. They were divorced in 1939; it does not appear who was granted the divorce or why. The remarriage was in 1945. About the following year the husband, a veteran of both world wars, was retired on pension as a captain in the United States Marine Corps, after more than thirty years' service. He is now employed as a watchman and is approximately sixty years of age; the wife's age is not disclosed in the record.

The remarriage ran into difficulties, according to the wife, in the summer of 1947 when the husband became neglectful of his personal cleanliness. He bathed infrequently, and on one occasion abstained from bathing for three weeks. According to the wife's sister, who lived with the parties for a time, the Captain did not bathe for six weeks in the summer of 1952. This neglect proved all the more offensive to the wife as he suffered from hemorrhoids which soiled his bed and underwear. He refused to change his undergarments for weeks. Moreover, having been gassed in World War I, he suffered from a condition which caused him to cought and spit. He kept an open spit can at or near his bed which was permitted to remain uncleaned for long periods and gave forth a bad odor.

The wife's testimony as to her husband's conduct is corroborated by their daughter, by the wife's sisters, and by another woman. Although the husband testified fully to other matters he failed to utter a single word in denial of their testimony as to his alleged uncleanlines. In 1948 the husband underwent surgery for his hemmorhoids, but his refusal to bathe except at long intervals persisted to the time of trial. His failure to deny this makes unavoidable the acceptance of the testimony of the wife and her witnesses as to Capt. Davey's obnoxious habits. At the argument here his counsel offered to explain that Capt. Davey's physical condition made bathing painful. This suggestion is dubious even if it is to be treated as testimony. The ailment is not un-

common and it does not ordinarily cause the victim to lapse into extreme and fixed habits of filthiness; nor would his physical condition account for his persistent shunning of the bath after his operation in 1948, or his unwillingness to change underclothes at reasonable intervals even before the operation.

When the wife left her husband's bed is not entirely clear. Various dates from the summer of 1947 to the fall of 1948 are given. She testified that the conditions complained of continued to the time of the trial, and that she could not longer tolerate sleeping in her husband's bed without injury to her health and self-respect. The daughter testified that her father's habits made her mother "nervous" but there was no medical testimony to this effect.

The husband attributed her cessation of cohabitation to quarrels over money. Her own version makes the inference possible that this may have played a role. At least as to the foul-smelling spit can, no reason appears why a housekeeper would not herself clean it before it became a nuisance. Her failure to do so suggests that an element of spitefulness may have motivated her. Certainly, she does not appear to have been solicitous for her husband in his ill health. It was doubtless a difficult and unpleasant situation in which neither did what might have been done to alleviate it.

We are of the opinion that the wife did not make out a sufficient case entitling her to a divorce and hence her bill for alimony was properly dismissed. *Zukerberg v. Zukerberg,* 188 Md. 428, 53 A. 2d 20; *Gold v. Gold,* 191 Md. 533, 62 A. 2d 540; *Hokemeyer v. Hokemeyer,* 194 Md. 223, 71 A. 2d 15.

It does not follow, however, that the husband must therefore be granted a divorce. He was not free from fault, as shown by the wife and her witnesses, uncontradicted by him. His conduct at least contributed to, if it did not justify, the wife's sleeping in her own bed. Moreover, according to his own version, he made no effort at reconciliation from 1947 to the time of the court

proceedings. The conclusion is inescapable that he did not wish to resume marital relations any more than she did.

Where both husband and wife live under the same roof but without marital cohabitation, and for years no gesture of conciliation or forgiveness is made by either, the inference is clear that both prefer to live in sullen hostility. Such were the circumstances here and neither may complain. Where both are equally at fault and unyielding neither is entitled to a divorce. *Martin v. Martin*, 141 Md. 182, 118 A. 410; *Dougherty v. Dougherty*, 187 Md. 21, 48 A. 2d 451.

The husband's claims are completely devoid of corroboration. While corroboration is not required as to every detail, yet there must be support of the material and controlling facts. *Hockman v. Hockman*, 184 Md. 473, 41 A. 2d 510; *Kelsey v. Kelsey*, 186 Md. 324, 46 A. 2d 627; *Hahn v. Hahn*, 192 Md. 561, 64 A. 2d 739.

Mrs. Davey was asked at the trial why she did not go back to live with her husband. She replied: "Well, would you want to live with a man who would beat you and abuse you like he did me?" Such a refusal is without significance when no offer had been made by her husband, and it is to be noted that the husband was not asked if he was willing to resume cohabitation and conduct himself in such manner as to make living together not insufferable. We perceive no reason for penalizing Mrs. Davey for not accepting an offer which the Captain withheld.

The wife was referring to an episode in June, 1951, after the separation had existed for four or five years, and could not have been the cause of it. The alleged beating may have constituted an additional grievance on the wife's part, but it would hardly justify her persisting in the separation if the husband had attempted a *bona fide* reconciliation. But he does not claim that he made such an attempt after 1947. The 1951 encounter resulted in a charge by the wife against her husband for assault which was dismissed. We agree

with the Chancellor that on this occasion the wife may have been drunk and at fault. She denies that she was drunk, and in any event no claim for divorce was based on this episode nor could it be. There was undisputed testimony that occasionally the husband too drank to excess. In respect to this, neither party has a basis for claiming a divorce.

We hold that both bills should have been dismissed.

*Affirmed in part and reversed in part,*
*and bill and cross-bill dismissed,*
*with costs to the appellant.*